UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MASHANTUCKET PEQUOT TRIBE,<br>          Plaintiff,<br>v.<br><br>TOWN OF LEDYARD,<br>PAUL HOPKINS,<br>Tax Assessor of the Town of<br>Ledyard, JOAN CARROLL, Tax<br>Collector of the<br>Town of Ledyard, and STATE<br>OF CONNECTICUT,<br><br>          Defendants. | No. 3:06cv1212 (WWE) |

## RULING ON MOTION TO DISMISS

This case concerns the authority of defendants State of Connecticut and the Town of Ledyard to tax slot machines owned by Atlantic City Coin & Slot Company ("ACC") leased by plaintiff Mashantucket Pequot Tribe ("Tribe"). Defendants have moved to dismiss on the basis of subject matter jurisdiction and failure to state a claim.

For the following reasons, the motions to dismiss will be denied.

## FACTUAL BACKGROUND

For purposes of ruling on the motions to dismiss, the Court accepts as true all factual allegations made in the complaint.

The Tribe is an American Indian tribe recognized by the federal government pursuant to 25 U.S.C. § 1758(a). Although the borders of the Tribe's reservation are generally adjacent to the Town of Ledyard, the Town provides no services within the reservation. The Tribe operates a gaming operation on the reservation pursuant to the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701-2721 ("IGRA") and the Final

1

Mashantucket Pequot Gaming Procedures, 56 Fed. Reg. 24996 (May 31, 1991). Gaming is the Tribe's principal source of revenue and provides the funds to support government services and the general welfare of the Tribe and its members.

Since 2001, the Tribe has leased gaming machines from ACC. Pursuant to the relevant lease agreement, the Tribe has agreed to pay any taxes or licensing fees on the gaming equipment leased from ACC.

Commencing with the October 1, 2003 grand list, the Town has assessed personal property taxes on the gaming machines leased from ACC.

The Tribe now seeks declaratory judgments that (1) the Town is without authority to include the leased gaming equipment in the Town's list of taxable property; (2) the Town is without authority "to assess, impose, or collect personal property taxes" on such machines and equipment; and (3) the "imposition and/or collection of" taxes on such machines and equipment "is void and illegal." The Tribe also seeks an injunction prohibiting the Town from including the leased equipment on its grand list and from collecting personal property taxes on such equipment.

## DISCUSSION

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

A motion to dismiss under FRCP 12(b)(1) "challenges the court's statutory or constitutional power to adjudicate the case before it." 2A James W. Moore et. al., Moore's Federal Practice, ¶ 12.07, at 12-49 (2d ed. 1994). Once the question of jurisdiction is raised, the burden of establishing subject matter jurisdiction rests on the party asserting such jurisdiction. See Thomson v. Gaskill, 315 U.S. 442, 446 (1942).

Defendants argue that the Tax Injunction Act, 28 U.S.C. § 1341 ("TIA"), bars this action.

The TIA provides:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

The TIA is grounded upon federalism concerns and is intended to limit federal interference with state matters such as taxation. Jefferson County v. Acker, 527 U.S. 423 (1999).

Plaintiff invokes jurisdiction pursuant to 28 U.S.C. § 1362, which provides that "[t]he district courts shall have original jurisdiction of all civil actions, brought by any Indian tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws or treaties of the United States." In Moe v. Confederated Salish and Kootenai Tribes, 425 U.S. 463, 474 (1976), the Supreme Court considered whether the TIA worked to bar a tribal attack upon state sales and personal property taxes applied to reservation Indians. The Supreme Court found that the legislative history of § 1362 underscored "a congressional purpose to open the federal courts to the kind of claims that could have been brought by the United States as trustee. . . ." The Court reasoned that the United States would not be prevented by the TIA in seeking to enjoin state law, and therefore the Indian Tribe should not be prevented from doing so. Lower courts have interpreted Moe as holding that 28 U.S.C. § 1362 overrides the jurisdictional bar of the TIA. Winnebago Tribe of Nebraska v. Kline, 297 F.Supp.2d 1291, 1300 (D.Kan. 2004).

Defendants argue that plaintiff is pursuing a tax challenge on behalf of ACC rather than itself. Defendants urge this Court to apply the reasoning of FDIC v. New York, 928 F.2d 56 (2d Cir. 1991), in which the Second Circuit held that the FDIC could not invoke the federal instrumentality exception to the TIA because it pursued claims on behalf of a private bank pursuant to an assignment of claims.

The instant case is distinguishable. First, pursuant to Moe, this Court has jurisdiction pursuant to § 1362 over a claim by an Indian tribe to seek injunctive relief from state taxation. Secondly, regardless of the merits of claim, the complaint asserts that the tax causes the Tribe economic loss and burdens its ability to self-govern. Taking the allegations as true, as this Court must on a motion to dismiss, the Tribe advances a claim to enforce its own rights and interests. See Winnebago Tribe of Nebraska, 297 F.Supp.2d at 1301 ("For purposes of defendant's motion to dismiss, it is sufficient that plaintiffs have alleged that the incidence of the tax falls on either the Winnebago Tribe or the Kansas Tribes.").

Defendant State of Connecticut contends that comity requires dismissal of this action. See Rosewell v. LaSalle National Bank, 450 U.S. 503, 525 n. 33 (1981) ("even where the Tax Injunction Act would not bar federal-court interference in state tax administration, principles of federal equity may nevertheless counsel the withholding of relief."). However, prior district courts have rejected comity as the basis of dismissal in the context of Indian tribes challenging state regulation. Winnebago Tribe of Nebraska, 297 F.Supp.2d at 1301; United States v. Washington, 459 F.Supp. 1020, 1031 n. 3 (W.D. Wash. 1978) (consideration of comity is not applicable to Indian tribes that

4

possess "the essential aspects of sovereignty"). Consonant with this precedent, the Court will maintain jurisdiction over the matter.

### B. Motion to Dismiss for Failure to State A Claim

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) should be granted only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). The function of a motion to dismiss "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980). In considering a motion to dismiss, a court must presume all factual allegations of the complaint to be true and must draw any reasonable inferences in favor of the non-moving party. Cruz v. Beto, 405 U.S. 319, 322 (1972).

Defendants argue that plaintiffs cannot maintain this action because the Town's tax applies to the non-tribal entity ACC rather than to the Tribe. Plaintiff maintains that the Court's review on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) does not permit dismissal of the case.

> The initial and frequently dispositive question in Indian tax cases, therefore, is who bears the legal incidence of a tax. If the legal incidence of an excise tax rests on a tribe or on tribal members for sales made inside Indian country, the tax cannot be enforced absent clear congressional authorization. . . . But if the legal incidence of the tax rests on non-Indians, no categorical bar prevents enforcement of the tax; if the balance of federal, state and tribal interests favors the State, and federal law is not to the contrary, the State may impose its levy, . . . and may place on a tribe or tribal members "minimal burdens" in collecting the toll. . . .

Oklahoma Tax Comm'n. v. Chicksaw Nation, 515 U.S. 450, 458 (1998). Tribal

sovereignty provides the geographical backdrop to this "particularized inquiry into the nature of the state, federal, and tribal interests at stake." <u>Wagnon v. Prairie Band Potawatomi Nation</u>, 546 U.S. 95 (2005).

Defendants argue that the Court can determine as a matter of law the validity of the taxation. Plaintiff points out that the Ninth Circuit has twice reversed dismissal for failure to state a claim of an action challenging on-reservation state regulation. <u>Gila River Indian Community v. Waddell</u>, 967 F.2d 1404 (9th Cir. 1992); <u>Crow Tribe of Indians v. Montana</u>, 650 F.2d 1104 (9th Cir. 1981). Upon review of the complaint, this Court agrees that the Tribe has alleged a cognizable claim that the doctrines of federal preemption and tribal sovereignty preclude the taxation at issue. This case is more appropriate for resolution on summary judgment. Accordingly, the Court will deny the motion to dismiss.

## **CONCLUSION**

For the foregoing reasons, the motions to dismiss [#37 and 38] are DENIED.


Dated this 25th day of April in Bridgeport, Connecticut.


_____/s/_____
Warren W. Eginton, Senior U.S. District Judge